IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martico A Muldrow,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>　　　　　Respondents. | No. CV-16-04606-PHX-DLR (CDB)<br><br>**ORDER**<br>**and**<br>**DENIAL OF CERTIFICATE OF APPEALABILITY AND IN FORMA PAUPERIS STATUS** |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Camille D. Bibles (Doc. 85) regarding Petitioner's Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 73). Petitioner, Martico A. Muldrow ("Petitioner"), was granted permission to file a successive § 2254 petition by the Ninth Circuit on his claim of prosecutorial misconduct based on allegations of newly discovered evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963.) The R&R concludes that Petitioner's proffered new facts fail to establish by clear and convincing evidence that, but for the alleged *Brady* violation, no reasonable fact finder would have found Petitioner guilty of the underlying offense and therefore the Court should not proceed to consider the merits of his *Brady* claim as presented in the instant successive petition for § 2254 relief.

The Magistrate Judge advised the parties that they had fourteen days from the date of service of a copy of the R&R to file specific written objections with the Court. (Doc. 85 at 20-21.) Petitioner filed his "Objections to the Report and Recommendation of the Magistrate Judge" on November 19, 2021, (Doc. 88), and Respondents filed their

"Response to Objections to the Report and Recommendation" on December 1, 2021. (Doc. 89.) The Court has considered the objections and reviewed the Report and Recommendation de novo. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).

## I. BACKGROUND

On October 18, 1999, after a "cold case" investigation involving DNA, a grand jury handed down a 6-count indictment charging Petitioner, with among other things, first-degree murder in the 1988 death of Eileen Myers. All counts but the murder count were dismissed as barred by the applicable statute of limitations. A trial to a jury beginning on April 30, 2001 ended on May 16, 2001 when the court declared a mistrial due to a hopelessly deadlocked jury. The second trial began on August 23, 2001 and ended on September 12, 2001, with a guilty verdict for first -degree felony murder. On October 23, 2002, the trial court sentenced Petitioner to a term of life imprisonment without parole for 25 years. The sentence was ordered to run consecutively to sentences that Petitioner was already serving.

After pursuing his state remedies, Petitioner filed a petition in 2007 seeking a federal writ of habeas corpus pursuant to § 2254, alleging ineffective assistance of counsel. The habeas court adopted the Report and Recommendation, which found that the trial court's denial of his claim of ineffective assistance of counsel was not based on an unreasonable determination of the facts and was not contrary to, or an unreasonable application of, *Strickland*. (Doc. 17 at 8-10.)

Petitioner filed another petition for state post-conviction relief ("PCR") in January 2014, raising claims of prosecutorial misconduct and ineffective assistance of trial, appellate, and post-conviction counsel. He alleged newly discovered evidence that was material to the credibility of the state's witness, investigating officer Saldate. The trial court and the Arizona Court of Appeals denied relief. In its February 11, 2016, decision the Arizona Court of Appeals stated:

> Impeaching Saldate with his history of lying in other cases may have been helpful to Muldrow in establishing bad faith in regard to his and the state's failure to record the identity of the confidential informant and in attempting to further bolster the

> reliability of Moore's confession by questioning directly the person to whom he had confessed. But, in contrast, Saldate's history of dishonesty would also have undermined his testimony that the confession had taken place at all, calling into question whether the statement was admissible under the standard set forth in *State v. Fulminante*, 161 Ariz. 237, 252 [] (1988), as understood at the time of the hearings in this case or as later clarified by our supreme court in *State v. Gibson*, 202 Ariz. 321 [] (2002). Thus, we cannot say that the evidence probably would have changed the outcome of the proceeding. The court therefore did not abuse its discretion in denying his petition insofar as it raised a claim of newly discovered evidence. *Cf. State v. Perez*, 141 Ariz. 459, 464 [] (1984) (appellate court will affirm trial court's ruling if result was legally correct for any reason).
>
> To the extent Muldrow also claims the trial court erred in denying relief on his claims of prosecutorial misconduct and ineffective assistance of counsel, we disagree. The court correctly found such claims, which arise pursuant to Rule 32.1(a), precluded and barred as untimely. *See* Ariz. R. Crim. P. 32.2(a)(3), (b); 32.4(a).

*State v. Muldrow*, 2016 WL 538327, at *1-3 (Ariz. Ct. App. Feb. 11, 2016).

**II. SECOND PETITION**

On November 9, 2016, Petitioner sought leave of the Ninth Circuit to file a second or successive habeas petition based on a claim of "prosecutorial misconduct based on newly discovered evidence in violation of *Brady v. Maryland*." (Doc. 15-1 at 3.) He argued that the "newly discovered evidence" established his innocence because, "given the totality of the evidence when viewed as a whole, no reasonable fact finder would have found the petitioner guilty." (Doc. 15-1 at 10.)

On September 28, 2017, the Ninth Circuit Court of Appeals summarily granted Muldrow permission to file a successive § 2254 petition. (Doc. 15). The § 2254 action was transferred from the Ninth Circuit Court of Appeals to the District of Arizona on November 7, 2016. (Doc. 15). The federal habeas action was stayed on Muldrow's motion on November 22, 2017, pending the results of state-ordered post-conviction DNA testing. (Doc. 27.) After the DNA testing was complete, the stay was lifted on February 11, 2020. (Doc. 47.)

Petitioner alleges in his amended second petition that "The prosecutor's suppression

of the evidence of Detective Saldate's perjury and other serious misconduct, in violation of *Brady v. Maryland* and the Fourteenth Amendment to the U.S. Constitution, deprived Mr. Muldrow of a fair trial." (Doc. 73 at 2). The R&R summarized Petitioner's claims as follows:

> 1. The Arizona Court of Appeals' decision "rejecting Mr. Muldrow's *Brady* claim is contrary to clearly established federal law;"
>
> 2. The Arizona Court of Appeals' decision "rejecting Mr. Muldrow's *Brady* claim is based on an unreasonable determination of the facts;"
>
> 3. "On de novo review this Court is bound by *Milke* to grant Mr. Muldrow relief on his *Brady* claim;"
>
> 4. "The prosecution suppressed evidence of Detective Saldate's history of perjury and other misconduct at trial, and continues to do so to this day;"
>
> 5. "The strength of the suppressed evidence of Detective Saldate's history of perjury and other serious misconduct undermines confidence in the outcome of Mr. Muldrow's trial."

(Doc. 85 at 13.)

After analyzing Petitioner's claims and considering the evidence, the R&R recommends dismissing the second or successive § 2254 petition because Petitioner failed to "establish the proffered new fact of Saldate's dishonesty establishes by clear and convincing evidence that, but for the alleged Brady violation in failing to provide the defense with Saldate's personnel file prior to trial, no reasonable factfinder would have found Muldrow guilty of the underlying offense." (Doc. 85 at 20.)

**II. OBJECTIONS**

Petitioner states that "the jury's verdict can only rest on the theory that Mr. Muldrow was an accomplice to the predicate felony, and for that reason is responsible for the death of Ms. Myers under the felony-murder rule." (Doc. 88 at 2) The objection goes on to explain that even though the R&R "acknowledges that the "trial court determined Muldrow was not eligible for the death penalty pursuant to the holdings in *Enmund v. Florida*, 458 U.S. 782 (1982) and *Tison v. Arizona*, 481 U.S. 137 (1987)," it did not:

> grapple with the implications of this ruling coupled with the trial court's ruling that the evidence was sufficient to sustain the verdict. Because Mr. Muldrow was neither the actual killer (and thus ineligible for a death sentence under *Enmund*) nor a major participant in the underlying felony (and thus ineligible under *Tison*), the jury's verdict only made sense if it found that he was an accomplice to the underlying felony. This meant that the jury had to conclude that Mr. Muldrow intended to promote or facilitate either the robbery of the grocery store or the kidnapping and sexual assault of Ms. Myers, and that the other person whose predicate felony he facilitated actually killed her. (Dkt. #84 at 4) The magistrate judge's examination of the newly discovered (or still-undisclosed) evidence of Detective Saldate's perjury and other misconduct does not square with this theory of guilt—the only viable theory in this case.

*Id.*

Petitioner argues that, based on the implications of the trial court's ruling and the jury's findings, Saldate's credibility is more important than the R&R recognized. Petitioner argues that Saldate's testimony about finding no shoeprints next to the victim's body was "key." Petitioner argues that the "hidden evidence" of Saldate's history of perjury could have undermined Saldate's investigation and that the R&R erred in finding that Saldate's history of perjury would not have affected the trial judge's decision to prevent Petitioner from presenting a third-party defense. *Id.* at 3.

The evidence of Petitioner's guilt was substantial. His DNA found in the victim's body. A hair, consistent with Petitioner's hair, was also found in the victim's body. Petitioner made several incriminating statements including that he was going to rob the store, that he had obtained $12,000 from the store, and that the victim squealed like a pig. Petitioner's palm print was found on a counter in the room where the safe was looted. The counter was regularly cleaned, and Petitioner had no reason to be in that room.

Even accepting Petitioner's argument that the jury must have concluded that Petitioner intended to promote or facilitate either the robbery of the grocery store or the kidnapping and sexual assault of Ms. Myers, and that the other person whose predicate felony he facilitated killed her, the evidence attacking Saldate's credibility is insufficient to sway every reasonable juror that Petitioner was innocent. The overwhelming evidence of Petitioner's inculpatory statements and the physical evidence of his fingerprints in the

room containing the safe and the DNA evidence collected from the victim's body are not diminished by Saldate's credibility or the question of whether Saldate collected shoe prints at the scene. Saldate had nothing to do with obtaining or collecting the overwhelming evidence of Petitioner's guilt used to convict.

Petitioner's second argument pertains to the effect evidence of Saldate's "perjury and other serious misconduct would have had on the trial judge's decision to prevent Mr. Muldrow from presenting a third-party defense." (Doc. 88 at 3.) Petitioner argues that Saldate opened the door to the admission of hearsay evidence to support his third-party defense.

That argument does not hold water for several reasons. Saldate did not open the door by answering defense counsel's question on cross-examination about who Ronald Moore was. It is recognized that a witness may "open the door" to more extensive cross-examination by attempting to minimize his conduct or by offering testimony that unfairly describes the evidence. *Eg. U.S. v. Baylor*, 97 F.3d 542 (D.C. Cir. 1996). Saldate's subject testimony was not unfair to Petitioner. It did not paint Petitioner in a bad light, and it did not attempt to minimize Saldate's conduct. Even if the door was opened, the evidence that Saldate gave false statements and false testimony in other cases does not create evidence of such probative value that Moore's alleged jailhouse confession establishes clear and convincing evidence that no reasonable juror would have found Petitioner guilty.

The alleged Brady violation impeachment evidence that Petitioner has offered is simply immaterial. The evidence of Petitioner's guilt is not built on Saldate's testimony and there is no exonerating evidence, other than impeachment, presented in the petition. Although Petitioner could have been able to impeach Saldate more thoroughly at trial with this new evidence, his role in the investigation was minor and his testimony was not critical to the State's case. The evidence offered by Petitioner is insignificant in the context of the evidence of guilt presented at trial. Petitioner has not shown by clear and convincing evidence that but for the alleged Brady violation no reasonable factfinder would have found him guilty of the underlying offense or of intending to promote or facilitate either the

robbery of the grocery store or the kidnapping and sexual assault of Ms. Myers,

**IT IS ORDERED** that Petitioner's Objection to the R&R (Doc. 88) is **OVERRULED**.

**IT IS ORDERED** that the R&R (Doc.85) is **ACCEPTED**.

**IT IS ORDERED** that Petitioner's Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 73) is **DISMISSED** with prejudice.

**IT IS ORDERED** that a Certificate of Appealability is **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right and jurists of reason would not find the assessment of the constitutional claims herein, debatable or wrong.

The Clerk of the Court shall enter judgment denying and dismissing Petitioner's Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 73) with prejudice and shall terminate this action.

Dated this 7th day of February, 2022.

Douglas L. Rayes
United States District Judge